My name is Nathan Swanson and I am here on behalf of Dorian Boyd. In 2011, Mr. Boyd was convicted of murder and sentenced to 40 years of incarceration. He subsequently appealed. This court upheld the conviction. He requested leave to go to the Supreme Court. That was denied. He eventually filed a timely pro se motion for post-conviction relief. After he filed that motion, it was dismissed by the trial court at what is commonly referred to as the first stage proceeding. That is, it was before counsel entered on the case, before counsel had a chance to prepare a petition for post-conviction relief, and before any responsive pleadings were filed by the state. In his pro se motion, the appellant raised a series of issues. He styled them Issues 1, 2, 3, 4, and 5. Primarily, I'd like to These included the allegation that trial counsel was ineffective for failing to retain a gunshot residue. That was the only aspect of what the appellant referred to as Issue 2 that the trial court discussed at all in dismissing the original petition. It also included the certain witnesses who had told police that they witnessed the murder but did not see a gun in the possession of the appellant, and also that he was ineffective for failing to subpoena to trial other witnesses, specifically witnesses who were the ones who had possession of the firearm and were eventually charged with possession of that firearm. As I said, the petition was dismissed for, under the standard of patently frivolous. This court reviews that de novo. In People v. Tate and People v. Upshaw, it was determined that a failure to properly investigate alibi witnesses or witnesses who would assist in the defense is sufficient to maintain a post-conviction relief. People v. Tate is especially relevant here because that was a first-stage dismissal. All we are asking is that this matter be sent back to the trial court for further proceedings on that basis. Good afternoon, good morning, your honors. May it please the court, counsel. Just to be clear, the precise issue before the court, because it was referenced sort of broadly to the second claim, the post-conviction petition, the defendant's opening brief, the specific argument was that counsel was ineffective for not investigating three witnesses who appear in summaries of police reports who were interviewed apparently at or around the time the crime occurred, for not calling them or investigating them as witnesses, to establish a proposition that the defendant did not have a gun at the time of the offense. So our arguments, obviously, are limited to that specific allegation and not to any other claims in the second allegation in the post-conviction petition. This court does review the dismissal of post-conviction petitions de novo, which is important to the extent here that the court never actually specifically addressed this claim in its ruling dismissing the post-conviction petition at the first stage. However, under de novo review, this court is not dependent upon the lower court's ruling or rationale and can adjudicate this petition or consider the appropriateness of the dismissal of the petition without reference to the court's ultimate decision below. I understand that the threshold showing for a first-stage post-conviction petition is very low. It's only a gist. The Supreme Court has, over a course of a series of cases culminating in one that's most often cited at Hodges, that petitions can only be dismissed at the first stage for lacking the claim of a gist of a constitutional error if they're either lacking an arguable basis in law or fact. I'm also aware, and I acknowledge to the court, to this court, that most often in instances where there's an allocation of ineffective assistance to counsel, first stage is not typically the venue in which the argument is played out about whether both prongs of the Strickland test are satisfied from a factual standpoint. Our position is that this claim is ripe for dismissal at the first stage particularly because it establishes a basis for finding there's no arguable basis in law and based on indisputably meritless legal theory. Let me switch horses on you, Mr. Chairman. Okay. One of the allegations was also that they didn't file a motion to quash his statement or the statements of witnesses. I'm sorry. And since this case was tried, we now have the case of People v. Thompson, which lays a foundation for what lay witnesses have to do vis-a-vis police officer witnesses. In this case, there was no motion to suppress those kinds of statements. And everybody's focusing on this second issue. But I want to focus on that issue. Do you think that People v. Thompson affects this case at all? All right. At least as far as raising the gist of a constitutional claim. Judge, I don't know how to say this, but I am thoroughly unequipped to answer that question at this point. I'd have to look at the case. I've definitely heard you say it before. Well, and unfortunately, what I say can be held against me in a later forum. Okay. Well, I appreciate your candidness. So it's an interesting point, Your Honor, and I know that oftentimes when post-conviction petitions come and there's multiple allegations, there may be others that sort of pop up as interesting. Well, this is an allegation that It's an allegation, but not litigated on appeal. Actually, let me be more specific. Well, I think that they do, they talk about that they didn't call these or investigate these. Well, I'll let it speak for itself. It is what it is. Well, the defendant's argument, as I understand it, that there are three witnesses. It has to do with, I think the issue was the admission of surveillance evidence and opinion evidence admitted for identification of the person depicted in the surveillance video. That is what it says. Was that That was number one. I'm not asking the court a question necessarily, more hypothetically. I don't know when this case came up on direct appeal, it didn't relate to the admissibility of a video based upon lay witness. You are right. So And it was discussed. And it was discussed, the fact that it was sort of a central issue that was raised, one of the two central issues raised by defendant on direct appeal. Right, it was. So, in that sense, it's at least standing right now a lot of the case. So, that may be the most legal argument you're going to pry out of me on that issue at this point. Okay. And so, obviously, I wish I could discuss it more thoroughly, Justice Cates, I apologize. No, I'm going to get curveball, there's no doubt about it. But with respect to me specifically to the three witnesses, Deontre Wiley, Andre Murray, and Trevon Wiley, if I remember correctly, these are witnesses, they were not affidavits. We're not challenging whether they constitute sufficient supplemental material for a petition at the first stage. It's a fairly broadly construed language in the Post-Conviction Hearing Act. Obviously, it doesn't have that same sort of import as an affidavit in terms of it being sworn to. But nonetheless, we're at the first stage. They are summaries, more or less hearsay, of what these witnesses claim to have seen, heard, or observed. Our position is that, under the premise that their utility was to establish the primary fact that the defendant was not in possession of a weapon, I think first I would start with kind of a logical premise of that. Not seeing a weapon is not the same as not possessing a weapon. And then we proceed from that sort of logical interpretation. When we look at the statements of these witnesses in the context of both the theory that's being proposed and then viewed from an objective standpoint of counsel's assessment of this evidence, and again, we can look at the record to basically determine whether the record refutes the legal premise that's being asserted. Here, these are obviously, although they're not part of the record, they are part of the petition which the court can consider of what defense counsel saw. We're not dealing with something that the defendant said, hey, I want you to go and speak to these three guys because they're going to give me helpful testimony. This is what counsel had before him or her and when this case was tried leading up to the trial. If you look at the three statements, the first one indicates, well, let me say as a preface, not only do the statements really not establish that even kind of threshold for a claim of ineffective assistance of counsel, but they're actually in some respects actively harmful to the defendant's case. Deandre Wiley testifies that he saw the defendant move towards the victim and then he heard a gunshot. He didn't see a gun, but he did see the defendant move towards the victim. And remember, when we looked at the facts of this case in Manhattan, the facts leading up to what the shot taking place was a confrontation between the defendant and Deandre Harden. So it sort of corroborates the state's theory about the fact that a confrontation has occurred. When we get to Andre Murray, that becomes even more pronounced. Where Murray's statement was that he saw the victim get smacked and then shot, and that the only one that was fighting with Deandre at the time was the defendant. So that not only establishes that there was this confrontation, it establishes there was a gunshot. He may not have seen the gun, but guns and gunshots usually go hand in hand with each other. And Trayvon Wiley said that he didn't see anything and he was intoxicated. So I'm not exactly sure if he has any value, even for the threadbare premise that a weapon was not observed at the time. So based strictly upon this claim or aspect of the post-conviction petition, which was framed by a defendant on appeal and now proposed to court, the trial court also went to dismissal of the post-conviction petition on the basis that it was frivolous and patently without merit. When viewed strictly within the facts as they are attached to the petition, failed to state any factual basis in which a legal claim could be made for ineffective assistance of counsel. Really, it was faked without even having to, for the state to have to interject any kind of argument. And that's sort of that kind of fine line between what the court can do at the first stage and the second stage. And that's our position as to why the court's ruling below is correct and was appropriately dismissed. Does the court have any questions for me? Thank you for your time, Your Honor. I appreciate it. Counsel? With regards to whether or not the facts alleged in the petition itself are sufficient, I'm sorry, in the appeal itself are sufficient, the information is that those summaries of reports were provided to defense counsel. The defense was that someone else committed this crime. Now, factually, if one looks at the trial record as well, there are other facts that are relevant here, namely that Justin Harper was the one who had the firearm at the time or who had the firearm when it was found, that he was subsequently charged with possession of it, that the individual who identified Appellant had originally reported to the police that he was not the shooter, that he knew him but was not the original shooter. These things all could have been fleshed out further by investigation of these three reports, these three individuals who said they were there. Two of them say, I saw the fight and I did not see Appellant with a firearm. But there was no investigation of these reports. Not that they were not called, but there was no investigation. People be upshot stands with the principle that it can be ineffective assistance of counsel to fail to call a witness if that is not backed up by sufficient factual and legal investigation and determination. You can't just say I'm not calling these people with no reason. You have to have a reason as a defense counsel. So in that, that's where the gist comes from. Further proceedings would be necessary to flesh this out. But I think it's clear that Appellant met the gist of a constitutional claim to survive first-stage proceedings. And unless the court has any questions? I don't believe we do. Thank you. We appreciate the brief start, Mr. Counsel. We'll take the case under its eyes when we have finished the morning docket.